James A Wrigley - OSB#90413
Kathleen L. Wilde - OSB#97105
OREGON ADVOCACY CENTER
620 SW Fifth Avenue - 5th floor
Portland, OR 97204
(503) 243-2081
(503) 243–1738 (FAX)
jwrigley@oradvocacy.org
kwilde@oradvocacy.org

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| OREGON ADVOCACY CENTER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. _____ |
| | ) | |
| vs. | ) | MEMORANDUM OF LAW IN |
| | ) | SUPPORT OF PLAINTIFF'S MOTION |
| SCAR/JASPER MOUNTAIN and | ) | FOR A PRELIMINARY INJUNCTION |
| DAVID ZIEGLER, Ph.D., in his official | ) | |
| capacity as Director of SCAR/JASPER | ) | |
| MOUNTAIN, | ) | |
| | ) | |
| Defendants. | ) | |

Introduction

The Oregon Advocacy Center (OAC) is the agency designated by the Governor of Oregon

as the protection and advocacy (P&A) system for Oregon pursuant to 42 U.S.C. §§15041 *et seq.*,

42 U.S.C. §§ 10801 *et seq.*, 29 U.S.C. §794(e) and ORS §192.515 *et seq.*  OAC's federal

mandate is to protect and advocate for people with disabilities.  As part of this mandate, OAC

has the authority to access mental health facilities for the purpose of providing information and

training and monitoring compliance with respect to the rights and safety of residents. Defendants

SCAR/Jasper Mountain and David Ziegler, Jasper Mountain's executive director, have denied OAC access to the Jasper Mountain Center (Jasper Mountain), a children's mental health residential treatment center, despite the statutory and regulatory requirement that they promptly provide OAC such access.

<u>Facts</u>

OAC attorney James Wrigley sent Dr. Ziegler and Alan J. Thayer, Jr., counsel for Jasper Mountain, a letter dated August 23, 2006 detailing various concerns about Jasper Mountain and also stating that OAC intended to begin regular monitoring visits to Jasper Mountain in the near future. It cited the governing regulations and noted that OAC had previously emailed to Jasper Mountain a pamphlet regarding its access rights and protection and advocacy powers.

Mr. Thayer responded in a letter dated August 25, 2006 that he had found no statutory authorization in the PAIMI Act for 42 C.F.R. § 51.42(c) regarding monitoring. He also suggested that the matter might have to be resolved in federal court. In a letter to Mr. Thayer dated September 11, 2006 (attached to Complaint as Exhibit A) Mr. Wrigley stated that OAC intended to visit Jasper Mountain on September 14, 2006 for monitoring purposes. To address the concern raised in Mr. Thayer's August 25, 2006 letter, Mr. Wrigley provided Mr. Thayer relevant authority. Finally, the letter asked that if Jasper Mountain persisted in denying or delaying access, it provide Mr. Wrigley the prompt written statement of reasons for denial or delay required by 42 C.F.R. § 51.43.

In a letter dated September 13, 2006 (attached to Complaint as Exhibit B), Mr. Thayer denied OAC access to Jasper Mountain, responding that:

> the regulations... require only 'reasonable unaccompanied access.' Until the outstanding issues are resolved, SCAR/Jasper Mountain believes that your request

for access is not reasonable. As previously mentioned SCAR/Jasper Mountain is comfortable having the differences under Federal statutes and regulations resolved by a Federal Judge....The issue is what is in the best interests and best medical interests of severely abused and emotionally disturbed children and their medical needs.

Argument

I.  OAC IS ENTITLED TO A PRELIMINARY INJUNCTION

"The traditional equitable criteria for granting preliminary injunctive relief are (1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in some cases). Alternatively, a court may issue a preliminary injunction if the moving party demonstrates '*either* a combination of probable success on the merits and the possibility of irreparable injury *or* that serious questions are raised and the balance of hardships tips sharply in his favor.'" Johnson v. California State Board of Accountancy, 72 F.3d 1427 (9th Cir. 1995) (internal citations omitted).

A. OAC HAS A SUBSTANTIAL LIKELIHOOD OF SUCCEEDING ON THE MERITS

a.  OAC Is Entitled to Access for Monitoring Purposes Under the PAIMI Statute and Regulations

As set forth below, the law strongly favors OAC. There is simply no legitimate basis for defendant's denial of access to OAC for monitoring purposes.

Congress created the Protection and Advocacy system following the disclosure of horrifying conditions at the Willowbrook State School for people with developmental disabilities by enacting  the Developmental Disabilities Assistance and Bill of Rights Act of 1975 (DD Act). 42 U.S.C. §§ 15001-115. This was followed by enactment of the Protection and Advocacy for

Mentally Ill Individuals Act of 1986, now known as the Protection and Advocacy for Individuals with Mental Illness Act (PAIMI Act), 42 U.S.C. §§ 10801 *et seq.* PAIMI in turn was followed by the Protection and Advocacy of Individual Rights Act (the PAIR Act) which covers people with disabilities who are not covered by the other acts. 29 U.S.C. § 794(e). " The federal P&A statutes, which Congress enacted after concluding that state systems for protecting the rights of people with disabilities varied widely and were in many cases inadequate, condition federal funding for each state on the establishment of an effective protection and advocacy system for individuals with mental illness or physical disabilities." <u>Disability Rights Wisconsin, Inc. v. Sate of Wisconsin Department of Instruction</u>, ___. F. 3d.____, 2006 WL 2613507 at 3 (7th Cir. Sept. 13, 2006)(citing 42 U.S.C. §§ 15001, 15043; 42 U.S.C. §§ 10801(a)(1)(4), 10803, 10805; 29 U.S.C. §§ 794e(a)(1); 794e(f).

The DD and PAIMI Acts are to be interpreted similarly. S*ee* S.Rep. No. 109, 99th Cong. 1st Sess. 3 1986; S.Rep.113, 100th Cong., 1st Sess. 24 (1987); 1987 U.S.C.C.A.N. 781, 803-04. In <u>Advocacy, Inc. v. Tarrant County Hospital District,</u> 2001 WL 1297688, FN 4 (N.D. Tex 2001), the court stated that "[i]n enacting [PAIMI] Congress extended the same protections to people with mental illness [as under the DD Act]" and noted that "the acts are nearly identical and further the same goal– protecting the rights of vulnerable individuals..." See also <u>Pennsylvania Protection and Advocacy, Inc. v. Royer-Greaves School for Blind,</u> FN 1, 1999 WL 179797 ( E.D. Pa. 1999) (PAIMI Act is "modeled after the DD Act and provides parallel protections for individuals with mental illness.")

Regarding PAIMI specifically, "Congress found that funding was needed for [independent advocacy] organizations, because the mentally ill were vulnerable to abuse, injury

and neglect and because the states' response to these problems was often inadequate."

Pennsylvania Protection and Advocacy, Inc. v. Houstoun, 228 F. 3d 423, 425 (3d Cir. 2000)

(citing 42 U.S.C. § 10801(a)).  In furtherance of these ends, under PAIMI  a P&A system has the

authority to "investigate incidents of abuse and neglect of individuals with mental illness if the

incidents are reported to the system of there is probably cause to believe that the incidents

occurred" and to "pursue administrative, legal, and other appropriate remedies to ensure the

protection of individuals with mental illness who are receiving care and treatment within the

State." 42 U.S.C. § 10805(a)(1)(A), (B).

A P&A also has the authority to "have access to facilities in the State providing care or

treatment."  42 U.S. C. § 10805(a)(3).  This provision provides monitoring authority to P&A's.

The PAIMI Act regulations spell out in more detail a P&A's monitoring authority. Pursuant to 42

C.F.R. § 51.42:

> (c) ...[A] P&A system shall have reasonable unaccompanied access to facilities
> including all areas which are used by residents, are accessible to residents, and to
> programs and their residents at reasonable times, which at a minimum shall
> include normal working hours and visiting hours. Residents include adults or
> minors who have legal guardians or conservators. P&A activities shall be
> conducted so as to minimize interference with facility programs, respect residents'
> privacy interests, and honor a resident's request to terminate an interview. This
> access is for the purpose of:
>
>> 1. Providing information and training on, and referral to programs
>> addressing the needs of individuals with mental illness, and information
>> and training about individual rights and the protection and advocacy
>> services available from the P&A system, including the name, address, and
>> telephone number of the P&A system.
>>
>> 2. Monitoring compliance with respect to the rights and safety of residents;
>> and
>>
>> 3. Viewing and photographing all areas of the facility which are used by
>> residents or accessible to residents.

(d) Unaccompanied access to residents shall include the opportunity to meet and communicate privately with individuals regularly, both formally and informally, by telephone, mail and in persons. Residents include minors or adults who have legal guardians or conservators.

OAC is plainly entitled to monitor the Jasper Mountain facility based on the statutory and regulatory language. *See, e.g.*, Robbins v. Budke, 739 F. Supp. 1479 (D.N.M. 1990); Michigan Protection and Advocacy Service v. Miller, 849 F.Supp. 1202 (W.D. Mich. 1994); Equip for Equity, Inc. v. Ingalls Memorial Hospital, 292 F. Supp. 2d 1086 (N.D.Ill. 2003); Pennsylvania Protection and Advocacy, Inc. v. Royer-Greaves School for Blind, 1999 WL 179797 ( E.D. Pa. 1999).

The Second Circuit recently explained in State of Connecticut Office of Protection and Advocacy for Persons with Disabilities v. Hartford Bd. of Education, ___, F.3d ___. 2006 WL 2642111 at 9 (2d Cir. Sept. 15, 2006) with regard to the DD Act, that "the statute provides access to service recipients for both investigatory and monitoring purposes, i.e. to investigate past instances of suspected abuse or neglect and to monitor to ensure current respect for the rights and safety of services recipients."  The court further stated that

> The records-access portion of the DD Act...supports the view that a P&A system has the authority to have physical access to a location and to and to observe and speak with service-recipients for monitoring purposes. It provides that a P&A system may view the records of an individual with a disability when, *inter alia*, 'as a result of *monitoring or other activities*, there is probable cause to believe that such individual has been subject to abuse or neglect."42 U.S.C. § 15043(a)(2)(I)(iii)(II). This language indicates that Congress intended P&A systems not simply to respond to reports of maltreatment, but also to monitor facilities to prevent abuse or neglect.  (Emphasis in the original).[1]

Id.

---

[1]As noted above, the PAIMI Act and DD Act are to be interpreted similarly.

The reasons provided to OAC for Jasper Mountain's denial of access lack clarity, but they appear to be two: 1) The PAIMI Act does not grant authority for the monitoring regulations found in 42 C.F.R. § 51.42(c) and 2) it is not in the residents' best interests for OAC to engage in monitoring activities. Regarding defendant's first contention,  42 U.S.C. § 10805(a)(3) states plainly that a P&A must "have access to facilities in the state providing care and treatment." This provision was explicitly relied upon to approve monitoring  activities in <u>Robbins v. Budke</u>, 739 F. Supp. 1479 (D.N.M. 1990) and <u>Michigan Protection and Advocacy Service v. Miller,</u> 849 F.Supp. 1202 (W.D. Mich. 1994). It is noteworthy that these cases preceded the promulgation of the PAIMI regulations in 1997.  *See also* <u>State of Connecticut Office of Protection and Advocacy v. Hartford Bd. of Education,</u> supra; <u>Equip for Equity v. Ingalls Memorial Hospital</u>, 292 F. Supp. 2d 1086, 1096 (N.D. Ill. 2003) (both "the statutory and regulatory language clearly and unambiguously gives a P&A system the authority to access the facilities and residents of a [psychiatric] hospital."

Regarding Jasper Mountain's second contention, there is no support whatsoever in the PAIMI Act  or regulations for denial of access to a P&A for monitoring purposes based upon "best interests and best medical interests of severely abused and emotionally disturbed children and their medical needs."  Congress expressly granted precisely the access rights to which defendants are objecting because its chief concern in enacting the PAIMI Act was the vulnerability of individuals with mental illness to abuse, neglect and serious injury.  See  42 U.S.C. § 10801(a).  In  <u>Disability Rights Wisconsin, Inc. v. State of Wisconsin Department of Public Instruction,</u> ___F. 3d.___, 2006 WL 2613507 at 8 (7th Cir, Sept. 13, 2006) , the court stated with regard to a privacy argument raised by the defendants in an attempt to prevent a P&A

from obtaining access to records requested as part of an investigation:

> The point of the federal P&A statutes is to establish and equip a specialized agency to look out for individuals with mental illness. Confounding the agency in the name of an illusory concern for privacy defeats that very important goal.

Similarly, if Jasper Mountain could deny access to OAC in the manner it intends, OAC would  be unable to "look out for individuals with mental illness." This would defy the intent of Congress to ensure that the rights of individuals with mental illness are protected (42 U.S.C. § 10801(b)(1)) by in practice leaving the decision of whether a P&A would engage in effective, legally authorized  monitoring activities to the facility.[2]  As the court stated in <u>Disability Rights Wisconsin, Inc. v. State of Wisconsin Department of Public Instruction</u>, __F. 3d.__, 2006 WL 2613507 at 8 (7th Cir, Sept. 13, 2006), citing <u>Alabama Disabilities Advocacy Prog. v. J.S. Tarwater Dev. Ctr.</u>, 97 F.3d 492, 497 (11th Cir. 1996):

> "it is clear that [the federal P&A statutes] provide [ ] express authority for P&A's to gain broad access to records, facilities and residents to ensure that the [statutes'] mandate can be effectively pursued'; <u>Miss. Protection and Advocacy System v. Cotten,</u> 929 F. 2d 1054-1058-59 (5th Cir. 1991 (holding that facilities have an affirmative duty to implement policies and practices that promote effective P&A access).

Of course, if Jasper Mountain has genuine clinical concerns regarding specific children, OAC will carefully consider this information.  In addition, OAC is required to and will conduct its activities "so as to minimize interference with facility programs, respect residents' privacy interests, and honor a resident's request to terminate an interview." 42 C.F.R. § 51.42(c).

---

[2]Other state agencies have been involved in investigating Jasper Mountain, but OAC has a different, and critical role. A P&A must by statute "be independent of any agency in the State which provides treatment or services (other than advocacy services) to individuals with mental illness[.]" 42 U.S.C. §10805(a)(2).  In addition, without passing judgment on the state's actions in this case, Congress has found that "State systems for monitoring compliance with respect to the rights of individuals with mental illness vary widely and are frequently inadequate." 42 U.S.C. § 10801(a)(4).

b. OAC is Suffering Irreparable Injury

Several courts have found that a P&A suffers irreparable injury if it frustrated in its

mission of protecting the rights of individuals with mental illness. For example, the Second

Circuit recently approvingly cited the district court's statement that "Courts have concluded that

a P&A system's inability to meet its federal statutory mandate to protect and advocate for the

rights of individuals with disabilities is an irreparable harm for purposes of injunctive relief."

State of Connecticut Office of Protection and Advocacy for Persons with Disabilities v. Hartford

Bd. of Education, ___, F.3d ___. 2006 WL 2642111, at 3 (2d Cir. 2006) (citing Conn. Office of

Prot. & Advocacy v. Hartford Bd. of Education, 355 F. Supp 2d 649, 652 ( D.Conn. 2005).  In

Iowa Protection and Advocacy Services, Inc. v. Gerard Treatment Programs, 152 F. Supp. 2d

1150,  (N.D. Iowa 2001), the court found that a children's psychiatric institution  improperly

denied the P&A access to residents and records. According to the court: "[the P&A] has... been

irreparably harmed by being prevented from pursuing fully its right to access records and

patients..." Id. at 1173. In another case, the court stated that "the defendant's refusal to provide

[the P&A] with records that it is entitled to review (indeed, charged to review as part of its

responsibilities) does in a very real and readily identifiable way, pose a threat to the plaintiff's

being able to discharge its obligations. And no amount of damages will remedy that sustained

harm." Wisconsin Coalition for Advocacy v. Czaplewski, 131 F. Supp. 2d 1039,1051 (E.D. Wis.

2001).

c. The Balance of Hardships Favors OAC

Since OAC is by law entitled to reasonable access to Jasper Mountain for monitoring

purposes, Jasper Mountain suffers no hardship.  The P&A, by contrast, suffers hardship if it

cannot fulfill its statutory function.  In a case, regarding a P&A finding of probable cause for an investigation under the DD Act, the Eleventh Circuit identified the interests involved:

> In the P&A probable cause process, the interests of three parties are implicated–those of the facility, those of the individual who may have been subject to abuse and his or her family, and those of the P&A, which has an obligation and mandate to protect from abuse the individual(s) and others who are similarly situated. In this balance, the facility's interests surely are less viable and of less import than those of the individual and the P&A.  The facility can claim no interest in avoiding investigations of harm or injury to a person with a disability...Indeed, one would suppose that a facility's legitimate interests are served when abuse and neglect are uncovered and can be corrected. Likewise, when a P&A makes a finding of probable cause, no liberty interest of the developmentally disabled person is threatened, as it is precisely that interest that the P&A seeks to protect.

Alabama Disabilities Advocacy Program v. J.S.. Tarwater Dev. Ctr., 97 F.3d 492, 499 (11th Cir. 1996).

While this case involves monitoring rather than an abuse and neglect investigation, the same principles hold true. Presumably, Jasper Mountain will actually benefit from monitoring that will help it ensure that it is complying with requirements regarding residents' rights and safety and that its residents and staff are educated regarding these rights and the role of the P&A. See e.g., Iowa Protection and Advocacy Services, Inc. v. Gerard Treatment Programs, 152 F. Supp. 2d 1150, 1174-75 (N.D. Iowa 2001). And it goes without saying that residents of a facility benefit from living in an environment in which they understand their rights and their rights and safety needs are respected.

    d. The Public Interest Will be Advanced by the Grant of Preliminary Relief

As noted above, Congress enacted the PAIMI Act because of concern that individuals with mental illness are vulnerable to abuse and neglect and that their rights need to be protected.. Monitoring of Jasper Mountain will help advance the public interest in ensuring that the rights

and safety of vulnerable individuals with mental illness are fully respected and that they have received appropriate information and training regarding their rights and the protection and advocacy services available from OAC.

Conclusion

For all of the above reasons, this Court should issue a preliminary injunction granting Plaintiff access to Defendants' facility and residents for monitoring purposes, as required by 42 U.S.C. § 10805(a)(3) and 42 C.F.R. § 51.42 (c).

This 18th day of September, 2006.

Respectfully submitted,

/s/ James A. Wrigley
James A. Wrigley - OSB#90413
Kathleen L. Wilde - OSB#97105
(503) 243-2081
ATTORNEYS FOR PLAINTIFF